MOORE, J., delivered the opinion of the court in which COLE, C.J., joined, and BATCHELDER, J., joined in part. BATCHELDER, J. (pp. 430-37), delivered a separate opinion concurring in part and dissenting in part.
OPINION
KAREN NELSON MOORE, Circuit Judge.
In 2010, the Michigan Gaming Control Board (“MGCB”), a state entity that regulates horse racing, held a hearing to determine whether certain drivers were involved in an illegal race-fixing scheme. At the hearing, Plaintiffs John Moody, Donald Harmon, Rick Ray, and Wally Mclllmur-ray, Jr. (“Plaintiffs”), four drivers licensed by the MGCB, declined to answer questions and invoked their Fifth Amendment right against self-incrimination. The MGCB later suspended the Plaintiffs’ licenses and issued orders excluding them from the race tracks, citing the Plaintiffs’ refusal to cooperate at the hearing. The Plaintiffs filed suit, alleging violations of their procedural due process and Fifth Amendment rights. In these appeals, which revisit issues considered by a prior panel of this court, the Defendants challenge the district court’s denial of qualified immunity on the procedural due process claim, and the Plaintiffs challenge the district court’s grant of qualified immunity on the Fifth Amendment claim.
For the following reasons, we AFFIRM the denial of qualified immunity on the procedural due process claim, REVERSE the grant of qualified immunity on the Fifth Amendment claim, and REMAND the case for further proceedings.
I. BACKGROUND
Upon receiving an anonymous tip, the MGCB began to investigate allegations of a race-fixing scheme involving certain gamblers and harness-racing drivers. As part of this investigation, the MGCB held an administrative investigatory hearing on May 20, 2010, with the Plaintiffs, all of whom were licensed by the MGCB as harness drivers. The hearing, referred to by some as the “Steward’s hearing,” was held to determine whether these drivers were involved in the scheme. At the hearing, all four drivers declined to answer questions and invoked their Fifth Amendment right against self-incrimination. R. 18-5 (Moody MGCB Hr’g Tr. at 5-8) (Page ID #197-200); R. 18-6 (Harmon MGCB Hr’g Tr. at 5-13) (Page ID #212-20); R. 18-7 (Mclll-murray MGCB Hr’g Tr. at 6-10) (Page ID #230-34); R. 18-8 (Ray MGCB Hr’g Tr. at 7-11) (Page ID #245-49). The next day, the MGCB suspended the Plaintiffs’ licenses, citing their failure “to comply with the conditions precedent for occupational licensing in Michigan as outlined in R431.1035.” R. 18-9 (Stewards Hr’g Ruling) (Page ID #254-57). This rule provides that an applicant for an occupational license must “cooperate in every way ... during the conduct of an investigation, including responding correctly, to the best of his or her knowledge, to all questions per- *424 taming to racing matters.” Mich. Admin. Code R. 431.1035. Later, on November 30, 2010, the MGCB issued orders of exclusion banning the drivers from all state race tracks, again citing their “ ‘failure to cooperate’ at the time of the Steward’s Hearing in May 2010.” R. 85-16 (Ernst Letters) (Page ID #1377-79). The Plaintiffs’ applications for 2011, 2012, and 2013 licenses were also denied.
In August 2012, the Plaintiffs brought suit under 42 U.S.C. § 1983, claiming violations of their procedural due process and Fifth Amendment rights. On November 27, 2013, the district court held that the Defendants were entitled to qualified immunity because the Plaintiffs had failed to identify a constitutional violation. It therefore granted the Defendants’ motion for summary judgment and denied the Plaintiffs’ motion for partial summary judgment. On appeal, we affirmed in part and reversed in part the district court’s holding with respect to Plaintiffs’ procedural due process claim, and held that although Plaintiffs had received due process with respect to their license suspensions, there was a disputed issue of material fact as to whether the Plaintiffs were denied due process on their exclusion from the race tracks. Moody v. Michigan Gaming Control Bd., 790 F.3d 669, 680 (6th Cir. 2015) (‘‘Moody I”). Specifically, we found that the Plaintiffs were due a post-exclusion hearing, which they did not receive, and that there was a genuine dispute as to whether or not Plaintiffs were themselves at fault for failing to request a hearing. Id. at 679-80. As to the Plaintiffs’ Fifth Amendment claim, we reversed the district court’s holding that Plaintiffs had failed to identify a constitutional violation. We held that the “Constitution entitled, the harness drivers to refuse to answer potentially self-incriminating questions, unless the state immunized them from prosecution. To punish the drivers violated the Constitution, and both suspension and exclusion constitute punishment.” Id. at 673. We therefore found that the Defendants had violated the drivers’ constitutional rights against self-incrimination, and remanded to the district court to consider the question of whether that right was clearly established at the time of the violation. Id.
On remand, the parties filed renewed cross-motions for summary judgment. The Defendants argued that we erred in concluding that the Plaintiffs did not receive a post-exclusion hearing, because Plaintiffs received a hearing on April 25, 2013, two years before our initial remand. The Plaintiffs, in response, conceded that a post-exclusion hearing took place on that date, but argued that the hearing, which occurred two years after the exclusion orders were issued, was not timely. On the Fifth Amendment claim, the Defendants argued, once again, that the Plaintiffs had failed to identify a constitutional violation, and that the right to be offered immunity against self-incrimination was not clearly established at the time of the violation.
The district court held that the Defendants’ argument with respect to the April 2013 hearing was irrelevant to the question on remand, and re-emphasized our holding that there was “a dispute of fact regarding whether the 2011 license applications constituted hearing requests.” R. 172 (Dist. Ct. Order at 12) (Page ID #4144). It concluded once again that neither party was entitled to summary judgment on the procedural due process claim. The district court also held that the Fifth Amendment violation identified in Moody I was not clearly established at the time of the violation, because “before the Sixth Circuit’s decision in Moody [I], a reasonable officer could have believed, as the [district cjourt did, that they were not required under the Fifth Amendment to offer immunity.” Id. at 10 (Page ID #4142). It held that the *425 Defendants were entitled to qualified immunity on the Fifth Amendment claims, and dismissed those Defendants whose personal involvement extended only to that claim. Id. at 10, 14 (Page ID #4142, 4146).
Both parties now appeal. Defendants argue that the district court erred in denying their motion for summary judgment, because Plaintiffs now concede that they did receive a postexclusion hearing. The Plaintiffs argue that they were nonetheless denied due process because that hearing was not timely, and the Plaintiffs challenge the district court’s holding that the Fifth Amendment right identified in the initial appeal was not clearly established at the time of the violation.
II. ANALYSIS
A. Standard of Review
We review de novo a district court’s grant or denial of summary judgment on the basis of qualified immunity. United States v. Ohio, 787 F.3d 350, 353 (6th Cir. 2015). Summary judgment is proper where “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, we must draw all inferences “in the light most favorable to the party opposing the motion.” Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted).
Where a defendant raises the defense of qualified immunity, “it is the plaintiffs burden to show that the defendants are not entitled to qualified immunity.” Burgess v. Fischer, 735 F.3d 462, 472 (6th Cir. 2013). To determine whether qualified immunity applies, this court applies a two-part test and asks: (1) whether the officer violated a constitutional right, and (2) whether that constitutional right was clearly established such that “a reasonable official would understand that what he is doing violates that right.” Saucier v. Katz, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (internal quotation marks omitted), abrogated in part by Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Courts have discretion to decide which of the two parts to apply first. Pearson, 555 U.S. at 227, 129 S.Ct. 808.
B. Defendants’ Appeal
1. Law-Of-The-Case Doctrine
Before reaching the merits of the Defendants’ appeal, it is necessary that we determine whether review of the procedural due process claims is barred by the law-of-the-case doctrine. “The law-of-the-case doctrine precludes reconsideration of issues decided at an earlier stage of the case.” Caldwell v. City of Louisville, 200 Fed.Appx. 430, 433 (6th Cir. 2006). The doctrine applies only to issues that were actually decided, whether explicitly or by necessary implication. Id. (citing McKenzie v. BellSouth Telecomms., Inc., 219 F.3d 508, 513 n.3 (6th Cir. 2000)). It does not extend to issues that should have been raised, or to issues not “fully briefed [or] squarely decided in an earlier appeal.” Burley v. Gagacki, 834 F.3d 606, 618 (6th Cir. 2016) (internal quotation marks omitted).
“Importantly, however, [the law-of-the-case] doctrine is intended to enforce a district court’s adherence to an appellate court’s judgment, and so is applied only loosely when we reconsider our own decisions.” Miller v. Maddox, 866 F.3d 386, 390 (6th Cir.2017). Therefore, while we generally will not, for prudential reasons, consider issues addressed by a prior panel, the doctrine does not limit our power of *426 review, and we may, in exceptional circumstances, deem it necessary to depart from a prior ruling. Musacchio v. United States, — U.S. —, 136 S.Ct. 709, 716, 193 L.Ed.2d 639 (2016); see also McKenzie, 219 F.3d at 513 n.3 (noting that the “ ‘law of the case’ doctrine is ‘directed to a court’s common sense’ and is not an ‘inexorable command’ ”). We have recognized three exceptional circumstances under which we will consider a previously decided issue: “(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice.” United States v. Rayborn, 495 F.3d 328, 337 (6th Cir. 2007) (quoting Westside Mothers v. Olszewski, 454 F.3d 532, 538 (6th Cir. 2006)).
Here, the Defendants appeal the district court’s holding that they were not entitled to qualified immunity on the procedural due process claim. As the district court rightly pointed out, this issue was addressed by a prior panel of this court in Moody I, which determined that (1) it was clearly established that the Plaintiffs were entitled to a post-exclusion hearing, (2) the Plaintiffs had not received such hearings, and (3) the Defendants therefore were not entitled to qualified immunity on that claim. Moody I, 790 F.3d at 679. Although the district court did not err in holding that Moody I had addressed these issues, we find that the parties have identified exceptional circumstances that justify our reconsideration of this issue now on appeal. Specifically, the parties now agree that the Plaintiffs actually received a hearing on their exclusions on April 25, 2013 in response to a request made on November 27, 2012. R. 144 (Defs. Mot. Summ. J. at 20-21) (Page ID #3717-18); R. 156 (Pis. Resp. Defs. Mot. Summ. J. at 9) (Page ID #4035). Because this is a new fact that was not before the prior panel, we believe it is prudent to revisit the question of whether or not a constitutional violation took place.
It is worth noting that the circumstances that justify reconsideration of this issue are indeed extraordinary. Here, despite both parties’ failure to raise these arguments in the initial appeal, the parties now agree that different facts govern our review. First Br. at 29; Fourth Br. at 2. These assertions, moreover, are supported by record evidence. R. 85-14 (Nov. 27, 2012 Letter from Counsel at 2) (Page ID #1369); R. 85-13 (Notice of Hr’g at 1) (Page ID #1364). Although these documents were available to the prior panel, neither document states the- particular purpose of the hearing. That ambiguity was not resolved until the parties appeared before this panel for oral argument, and counsel clarified that the hearing addressed both the exclusion orders and the license suspensions. Therefore, although the evidence supporting these facts may not.be “new,” the particular fact before us—that the exclusion orders were considered in the April 2013 hearing—is, from our perspective, a new fact.
We will not, however, revisit our prior holding that the right at issue was clearly established, because the parties have put forth no extraordinary circumstances warranting our reconsideration of that claim. We also will not revisit the issue of Defendants Ernst and Lessnau’s personal involvement in violating Plaintiffs’ procedural due process rights. This claim was raised in the Defendants’ initial motion for summary judgment, and therefore was a part of the record before the Moody I panel. R. 144 (Defs. Mot. Summ. J. at 8) (Page ID #3705). In fact, as the district court pointed out on remand, the Moody I panel specifically identified Ernst as an individual who told Plaintiffs that they *427 could not appeal their exclusion orders. See Moody I, 790 F.3d at 679-80. Because there are no new factual claims with respect to Ernst and Lessnau’s personal involvement, and no other extraordinary circumstances that warrant our consideration, we decline to reconsider whether these Defendants may be dismissed on the basis that they were not personally involved in the alleged violation.
2. Procedural Due Process Claim
The Defendants contend that they are entitled to summary judgment on the procedural due process claim because the Plaintiffs now admit that they received a post-exclusion hearing. First Br. at 29. The Plaintiffs, in response, argue that the April 25, 2013 hearing did not moot their claim, because the hearing was not received within fourteen days of their November 27, 2012 request, as required by Michigan Administrative Code Rule 431.1130(3). Second Br. at 49-50. Therefore, they argue that they were deprived of a prompt post-deprivation hearing. Id. at 50.
Contrary to the Defendants’ assertion, due process is not satisfied merely because a hearing took place. Due process requires that a post-deprivation hearing take place “at a meaningful time and in a meaningful manner.” Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (citation omitted). With respect to horse racing in particular, the Supreme Court has held that trainers, and presumably drivers, are entitled to a prompt post-deprivation hearing “that would proceed and be concluded without appreciable delay,” because “the consequences to a [driver] of even a temporary suspension can be severe.” Barry v. Barchi, 443 U.S. 55, 66, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979).
Here, the exclusion orders were issued on November 30, 2010, and the post-exclusion hearing did not take place until April 25, 2013—nearly two and one-half years after the deprivation took place. Under these circumstances, it is clear that the Plaintiffs have identified a violation of a clearly established right, and the Defendants are not entitled to summary judgment on the basis of qualified immunity. We therefore affirm the district court’s denial of the Defendants’ motion for summary judgment with respect to the procedural due process claim. We remand the case for further proceedings, with the understanding that go|ng forward, it shall be the law of the case that the Plaintiffs received a post-exclusion hearing on April 25, 2013.
C. Plaintiffs’ Cross-Appeal
1. Fifth Amendment Claim
The Plaintiffs, in their cross-appeal, challenge the district court’s holding that the Fifth Amendment right identified in Moody I was not clearly established at the time of the violation. “A right is ‘clearly established’ if ‘[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Baynes v. Cleland, 799 F.3d 600, 610 (6th Cir. 2015) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)), cert. denied, — U.S.—, 136 S. Ct. 1381, 194 L.Ed.2d 361 (2016). “In deciding whether a right has been clearly established, the Supreme Court has ‘repeatedly’ .warned lower courts not to define the right at ‘a high level of generality.’ ” Hagans v. Franklin Cty. Sheriff’s Office, 695 F.3d 505, 508 (6th Cir. 2012) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). However, we have also recognized that “[a] court need not have previously held illegal the conduct in the precise situ *428 ation at issue because officials can still be on notice that their conduct violates established law even in novel factual circumstances.” Sutton v. Metro. Gov’t of Nashville & Davidson Cty., 700 F.3d 865, 876 (6th Cir. 2012) (internal quotation marks omitted).
The right identified in Moody I is derived from the Fifth Amendment, which states that no person “shall be compelled in any criminal case to be a witness against himself.” U.S. Const, amend. V, § 3. In Moody I, we held that the Amendment “entitled the harness drivers to refuse to answer potentially self-incriminating questions, unless the state immunized them from prosecution. To punish the drivers violated the Constitution, and both suspension and exclusion constitute punishment.” Moody I, 790 F.3d at 673. The right at issue, therefore, was the right to refuse to answer self-incriminating questions without threat of punishment, unless immunity was offered. The Defendants argue that the Moody I panel announced “a new requirement that the government expressly offer immunity to state licensees before sanctioning them for refusing to answer regulatory-related questions.” Third Br. at 25. Their argument is belied by precedent. In Lefkowitz v. Turley, 414 U.S. 70, 78, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), the Supreme Court held that “a witness protected by the [Fifth Amendment] privilege may rightfully refuse to answer [potentially self-incriminating questions from his employer] unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant.” In other words, “if answers are to be required in such circumstances[,] States must offer to the witness whatever immunity is required to supplant the privilege and may not insist that the employee or contractor waive such immunity.” Id. at 84-85, 94 S.Ct. 316 (emphasis added). That is precisely the right announced in Moody I. Therefore, the right was clearly established.
The Defendants nonetheless argue that prior to Moody I, an employer was not required to offer immunity because an employee could presume his statements were automatically immune under Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). In Garrity, the Supreme Court held that where a public employer “use[s] the threat of discharge to secure incriminatory evidence against an employee,” the Fifth Amendment prohibits the use of such incriminating evidence in a subsequent criminal proceeding. 385 U.S. at 499-500, 87 S.Ct. 616. We do not find the Defendants’ argument persuasive. First, prior cases indicate that Garrity immunity may not necessarily be coextensive with “whatever immunity is required to supplant the privilege.” Turley, 414 U.S. at 84-85, 94 S.Ct. 316. For example, as noted in Kastigar v. United States, 406 U.S. 441, 458, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Fifth Amendment protects against the use and the derivative use of coerced statements at trial. That grant of immunity exceeds the grant articulated in Garrity.
Second, the Defendants’ argument undermines the clear language of subsequent cases that articulate the specific right at issue here. The Supreme Court in Turley articulated a separate Fifth Amendment right that applies when potentially self-incriminating questions are posed in a public-employment setting. Turley, 414 U.S. at 78, 94 S.Ct. 316. Although that right is not absolute, it is clear that under some circumstances a public employee must be able to invoke that privilege without fear of punishment. See id. at 77, 94 S.Ct. 316 (holding that the Fifth Amendment “not only protects the individual against being *429 involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings”); Gardner v. Broderick, 392 U.S. 273, 276, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) (“Our decisions establish beyond dispute the breadth of the privilege to refuse to respond to questions when the result may be self-incriminatory, and the need to fully implement its guaranty”). The key question, for our purposes, is when that privilege can be invoked. Turley provides us with an answer, and instructs that the privilege may be enjoyed “unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant.” 414 U.S. at 78, 94 S.Ct. 316. To assume, as the Defendants would have us do, that immunity applied automatically is to say that there is no right at all.
Moreover, the Defendants fail to recognize that the right articulated in Turley is separate and distinct from the one articulated in Gamty, one which carries separate entitlements, protects against different infringements by the government, and, importantly, one whose contours are shaped by very different considerations. Immunity under Garrity has direct and obvious criminal implications that require the right to be absolute. See Garrity, 385 U.S. at 500, 87 S.Ct. 616 (“There are rights of constitutional stature whose exercise a State may not condition by the exaction of a price.”) Although the right at issue here and in Turley involves potential criminal consequences, it is more directly related to an individual’s interest in public employment, which must be balanced against the public interest in obtaining information to “to assure the effective functioning of government.” Turley, 414 U.S. at 81, 94 S.Ct. 316 (citation omitted). These countervailing considerations color the contours of the right and impose a different set of procedural steps that are intended both to preserve the privilege against self-incrimination, but also to allow the state to compel testimony to ensure the effective administration of government. See Kastigar, 406 U.S. at 444-45, 92 S.Ct. 1653. As Turley makes clear, making an offer of immunity is one such procedural step. Turley, 414 U.S. at 84-85, 94 S.Ct. 316.
Garrity immunity prohibits the use of coerced statements in criminal proceedings, but it does not protect against the act of coercion itself. The Supreme Court in Turley, Gardner, and Kastigar recognized that the act of coercion itself is a public action that threatens the Fifth Amendment in a markedly different way than does the use of a coerced statement in a criminal proceeding. Therefore, “a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.” Lefkowitz v. Cunningham, 431 U.S. 801, 805, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). Given the Supreme Court’s recognition that the privilege against self-incrimination “can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory,” Kastigar, 406 U.S. at 444, 92 S.Ct. 1653, the Court has recognized a separate right for individuals to refuse to answer in civil proceedings, the contours of which are separate from the immunity articulated in Garrity.
Finally, we reject the Defendants’ argument that the circumstances here are distinguishable from cases where employees were explicitly asked to waive their right to immunity. See Turley, 414 U.S. at 82, 94 S.Ct. 316; Cunningham, 431 U.S. at 805-06, 97 S.Ct. 2132. The record demonstrates *430 that the Plaintiffs were suspended and excluded solely on the basis of Michigan Administrative Code Rule 431.1035, which requires an applicant for an occupational license to cooperate in every way during the course of an investigation, including by responding to all questions. See R. 18-9 (Stewards Hr’g Ruling) (Page ID #254-57); R. 85-16 (Ernst Letters) (Page ID #1377-79); Mich. Admin. Code R. 431.1035. These circumstances are substantially similar to the circumstances in Turley, where state law provided that a failure to cooperate or answer questions was grounds for disqualifying a state contractor’s contracts. Turley, 414 U.S. at 71, 82, 94 S.Ct. 316. Indeed, the Court in Turley recognized that “[t]he waiver sought by the State, under threat of loss of contracts, would have been no less compelled than a direct request for the testimony without resort to the waiver device.” Id. at 82, 94 S.Ct. 316. Here, the administrative rule, as applied, left Plaintiffs with only two choices: to waive their privilege and cooperate with an investigation, or to be punished. The Supreme Court has clearly held this choice to be coercion, which constitutes an illegal action until an offer of immunity is made.
Under the conditions articulated with respect to the particular right at issue, a public employee “may rightfully refuse to answer unless and until he is protected at least against the use of his compelled' answers.” Turley, 414 U.S. at 78, 94 S.Ct. 316 (emphasis added). The Supreme Court has made clear that if a state wishes to punish an employee for invoking that right, “States must offer to the witness whatever immunity is required to supplant the privilege and may not insist that the employee or contractor waive such immunity.” Id. at 85, 94 S.Ct. 316. We therefore reverse the district court’s grant of qualified immunity on the Fifth Amendment claim, and hold that the right articulated in Moody I was clearly established at the time of the violation.
2. Motion to Reopen Discovery and Amend the Complaint
The Plaintiffs also appeal from the district court’s denial of their motion to reopen discovery, motion to compel discovery, and motion to amend the complaint. These claims are not properly before us. The district court has not entered a final judgment in this case, nor has it certified any of these claims for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b). These claims therefore exceed our jurisdiction.
III. CONCLUSION
Based on the foregoing, we AFFIRM the denial of qualified immunity on the procedural due process claim, REVERSE the grant of qualified immunity on the Fifth Amendment claim, and REMAND the case for further proceedings.