NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0578n.06

No. 24-4075

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 15, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| ANTONIYO TAYLOR, | ) | OHIO |
|     Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: STRANCH, BUSH, and READLER, Circuit Judges.

**JOHN K. BUSH, Circuit Judge**. Antoniyo Taylor pleaded guilty to conspiring to possess and possession of cocaine, both with the intent to distribute. The district court sentenced him to 119 months in prison. On appeal, Taylor argues that his sentence was procedurally and substantively unreasonable. We disagree and **AFFIRM**.

**I.**

Taylor dealt cocaine in Northeast Ohio. In May 2022, law enforcement executed valid search warrants at Taylor's apartment, his home in Medina, and two of his storage units. At the apartment, officers found 874.24 grams of powder cocaine, 3.57 grams of cocaine base, paraphernalia, and a loaded firearm magazine. The Medina home contained $168,140 in cash and four cell phones, and the storage units housed several vehicles.

During the investigation, Taylor admitted to officers that he had been dealing drugs since 2014 and that he sold cocaine for roughly $900 an ounce. He said he was "unemployed" and the

cash in his home was his "saving[s]" from the "hustle." R. 34, PSR, at 6. He also confessed to owning two of the seized vehicles.

After his indictment, Taylor pleaded guilty to conspiring to possess cocaine with intent to distribute and possessing cocaine with intent to distribute. His plea agreement listed a base offense level of 24 for possessing 500 to 2,000 grams of cocaine; that offense level dropped to 23 after a two-level drug-premises enhancement and a three-level reduction for acceptance of responsibility. The plea agreement stated that "the recommendations of the parties [would] not be binding upon the Court," and "that the Court alone [would] decide the advisory guideline range under the Sentencing Guidelines, . . . and what sentence to impose." R. 23, Plea Agreement, PageID 72.

Taylor's presentence report (PSR) differed from the plea agreement. The PSR noted that the physical quantities of cocaine seized did not reflect the scale of his offense. So the PSR converted the $168,140 in cash to the equivalent cocaine quantity of 186.82 ounces, raising Taylor's base offense level to 30. The PSR based its conversion on Taylor's own statements to law enforcement—he told law enforcement that the $168,140 in cash were drug proceeds and that he sold cocaine for approximately $900 per ounce. According to experienced probation officers and a DEA contact, $30,000 was a reasonable estimated cost for one kilogram of cocaine. Using either number—$900 per ounce or $30,000 per kilogram—led to a six-level increase in Taylor's offense level. The PSR noted that it used the $900 to one ounce conversion because it was more favorable to Taylor.

Taylor raised two objections to the PSR's six-level increase. First, he stated that "the 874.24 grams of powder cocaine and 3.57 grams of crack cocaine seized accurately reflect[ed] the scale of the offense as reflected in the written plea agreement negotiated and signed by the parties and accepted by the court." R. 34, PSR, at 27. Second, he alleged that "the information set forth

in the PSR fail[ed] to provide sufficient indicia of reliability to support a six-level increase." *Id.*

Taylor did not dispute any of the PSR's specific facts and raised no other objections.

At sentencing,[1] Taylor objected to any sentencing enhancements based on conversion of the seized cash to drugs and reiterated that the plea agreement properly stated his drug amount. The government responded that it agreed with the PSR's drug conversion but was willing to follow the plea agreement's lesser drug amount. After overruling Taylor's objection, the district court explained that the PSR's cash-to-drug conversion was "accurate" and "supported by a preponderance of the evidence." R. 59, Sentencing Tr., PageID 358.

In so finding, the district court reviewed several facts stated in the PSR: officers seized $168,140 in cash from Taylor's Medina home; Taylor conceded that he owned that cash and that it was drug proceeds; Taylor admitted that he had dealt drugs since 2014; seasoned probation officers and a DEA contact stated that $30,000 was a reasonable price for one kilogram of cocaine; Taylor was not just a street-level dealer but described himself as "an ounce man;" and Taylor admitted he sold cocaine at a rate of $900 per ounce. Because the physical drugs seized did not adequately represent Taylor's offense, the district court noted that it had a duty under U.S.S.G. § 2D1.1 comment note 5 to convert the $168,140 in cash to drug quantity. According to the Guidelines, the district court considered "the price generally obtained for the controlled substance." R. 59, Sentencing Tr., PageID 359 (quoting U.S.S.G. § 2D1.1 cmt. n. 5). The court stated that the probation officer used Taylor's $900 price to arrive at 186.82 additional ounces of cocaine because that was more beneficial to Taylor than using the $30,000 per kilogram price. But under either price—the $30,000 mentioned in the PSR or Taylor's price of $900—Taylor's offense

---

[1] Taylor had two sentencing hearings because the first was continued. Although not all the details of the first hearing are relevant to this appeal, Taylor does contend in his appellate brief that he properly invoked his Fifth Amendment right against self-incrimination "[a]t the initial sentencing hearing." Appellant Br. at 20-21.

level increased by six. The court also noted it was not bound by the plea agreement's sentencing recommendation, under the agreement's express terms.

Taylor requested a Guidelines range of 51 to 63 months. That range reflected the plea agreement's base offense level of 23 and his undisputed criminal history category II. The district court declined Taylor's suggestion and explained that Taylor's criminal history included "juvenile adjudications for assault, driving without a license, receiving stolen property, carrying a concealed weapon[,] and drug possession," four adult misdemeanors for driving under the influence of marijuana, and "six [adult] felonies for attempted burglaries, vandalism, attempted carrying [of] concealed weapons, carrying concealed weapons, attempted felonious assault[,] and a trafficking offense." *Id.* at PageID 369–70. Taylor had been unemployed for over 10 years, which further supported an extensive drug trafficking history.

The district court also discussed the need to consider sentencing disparities, explaining that for 114 defendants with Taylor's offense level and criminal history category, the average sentence was 97 months and the median sentence 107 months. The court noted that his Guidelines range was 97 to 121 months, while the plea agreement's suggested range was 51 to 63 months.

Finally, the district court explained its reasons for the sentence it intended to impose: that Taylor had several juvenile and adult convictions, including for firearm possession; that many of his prior offenses were too old to score in his criminal history II, and one was a crime of violence; and that Taylor was at high risk for recidivism because he had no verifiable employment, lacked job skills, and had been dealing since 2014. The court concluded that it was "clear [Taylor] was making a living essentially by drug trafficking and lived a very comfortable life-style as a result of that business." *Id.* at PageID 373. As to mitigating factors, the court noted that Taylor had a difficult upbringing and had not been in jail for about 20 years—but during 10 of those 20 years,

4

he had hidden a drug dealing business from law enforcement. His driving record, "replete with a pattern of continuing to violate the law," made him "a danger to the community" and showed he was "certainly not someone who complies with the law." *Id.* at PageID 374.

For all of those reasons, the district court chose a sentence of 121 months—the highest point in the Guidelines range. But because Taylor had already been in custody for a year while his case was pending, he had potentially lost out on two months of good-time credit. So the district court lowered his sentence to 119 months. The court recommended drug treatment and a mental health evaluation as probation conditions and also noted that Taylor would receive adequate medical care in prison for his underlying health issues. Before closing the hearing, the district court inquired under *Bostic*[2] whether the government or Taylor had any further objections. Taylor raised only a Safety Valve issue unrelated to this appeal.

Taylor timely appealed his within-Guidelines 119-month sentence.

**II.**

Taylor argues that his sentence was procedurally unreasonable because the district court used an inflated drug quantity to calculate his Guidelines offense level. We disagree.

A sentence is procedurally unreasonable if the district court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." *United States v. Rios*, 830 F.3d 403, 435 (6th Cir. 2016) (quoting *United States v. Penaloza*, 648 F. App'x 502, 512 (6th Cir. 2016) (cleaned up)).

---

[2] *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004).

"At sentencing, when the exact amount of drugs involved is uncertain, the court may make an estimate supported by competent evidence, but the evidence supporting the estimate must have a minimal level of reliability beyond mere allegation, and the court should err on the side of caution in making its estimate." *United States v. Baker*, 858 F.3d 419, 423 (6th Cir. 2017) (cleaned up), *vacated on other grounds*, 869 F.3d 401 (6th Cir. 2017). When the amount of drugs seized "does not reflect the scale of the offense, the [district] court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1 cmt. n. 5. "In making this determination, the court may consider . . . the price generally obtained for the controlled substance, financial or other records, [and] similar transactions in controlled substances by the defendant . . . ." *Id.*; *see also Baker*, 858 F.3d at 423; *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008).

We review a district court's factual findings at sentencing for clear error, *Rios*, 830 F.3d at 435, including the determination of drug quantity attributable to a defendant, *United States v. Gardner*, 32 F.4th 504, 524 (6th Cir. 2022).[3] A district court's "factual finding is clearly erroneous" only if this court, "on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009) (cleaned up).

Taylor argues that the district court erroneously inflated his drug quantity because the court improperly relied on the PSR's factual findings. Federal Rule of Criminal Procedure 32 controls when a district court may rely on the PSR at sentencing without making new factual findings. *United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021). A district court "may accept any

---

[3] The Government argues that plain error review applies because Taylor never "object[ed] to the adequacy of the court's explanation in calculating his base offense level." Appellee Br. at 19. But the record does not support that contention because Taylor previously raised essentially the same objection. Earlier in the sentencing hearing, he objected to "any enhancements based on the amount of money seized." R. 59, Sentencing Tr., PageID 357. This objection served to challenge the adequacy of the court's explanation in calculating his base offense level because the court enhanced his sentence based on the amount of money seized. Therefore, clear error review applies.

undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). "[F]or any disputed portion of the presentence report," however, the court must "rule on the dispute or determine that a ruling is unnecessary . . . ." Fed. R. Crim. P. 32(i)(3)(B). To dispute a portion of the PSR at sentencing, the defendant must do more than "bare[ly]" or "simply deny[] the PSR's truth"; rather, "he must produce *some evidence* that calls the reliability or correctness of the alleged facts into question." *Small*, 988 F.3d at 257 (cleaned up); *see also United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015).

Taylor argues that the district court's reliance on the PSR to convert cash proceeds to drugs was clearly erroneous for two reasons: first, because the district court adopted the PSR's drug conversion methodology instead of conducting independent factfinding; and second, because the district court agreed with the PSR that Taylor acquired the $168,140 in cash *solely* from drug dealing activity. His arguments fail because the district court was free to adopt the PSR's findings on both issues—unless Taylor disputed the PSR's factual bases.

He, however, failed to dispute the PSR's factual bases on either issue. Taylor made two objections to the PSR: he asserted that the amount of cocaine physically seized sufficiently represented his drug quantity and that the conversion of $168,140 cash to drugs was not sufficiently reliable. These are both bare and simple denials. Taylor neither objected to any specific facts nor produced any contrary evidence. *See United States v. Holt*, 116 F.4th 599, 614–15 (6th Cir. 2024) (defendant failed to dispute PSR's facts where he failed to "identify the disputed fact with specificity and clarity," and "rel[ied] on a bare denial" and "[v]ague assertions of inaccuracies"). For example, he did not deny that the cash proceeds were his or that they were the result of drug trafficking activity.

The same is true of Taylor's objection at the sentencing hearing. Taylor's counsel solely objected to "any enhancements based on the amount of money seized," contending that the parties' plea agreement accurately reflected his drug quantity. Although the district court clearly stated the facts it relied on from the PSR, Taylor neither objected to any specific facts nor produced any evidence to counter those facts. Additionally, the plea agreement explicitly stated that the district court was not bound by the agreement's drug calculation or sentencing recommendation. *See United States v. Warren*, 8 F.4th 444, 448 (6th Cir. 2021) ("[W]e enforce [plea agreements] according to their literal terms."). The district court had no duty to follow the plea agreement's recommendation—so the court did not err in choosing a different sentence.

Because Taylor failed to dispute the PSR's facts, the district court properly relied on those facts when calculating his drug quantity. *Cover*, 800 F.3d at 279 ("[W]ithout *some evidence* [from defendant] disputing the [PSR's factual contention], the district court was permitted to rely on the presentence report's accuracy."). Relying on the PSR's facts, the district court explained its cash-to-drug conversion and found the PSR's calculations supported by a preponderance of evidence. *See Gardner*, 32 F.4th at 525 ("[U]nder a preponderance-of-the-evidence standard, the district court only need find it more likely than not" that defendant dealt a certain amount of drugs.). Thus, the district court committed no procedural error in calculating Taylor's drug quantity.

**III.**

Taylor next argues that his sentence was substantively unreasonable because the district court overemphasized his criminal history, gave him a higher-than-average sentence, and punished him for invoking his right under the Fifth Amendment against self-incrimination. Each of these arguments is meritless.

"A claim that a sentence is substantively unreasonable is a claim that a sentence is too long" because "the court placed too much weight on some of the [18 U.S.C.] § 3553(a) factors and too little on others . . . ." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Our review of a sentence for substantive reasonableness is "highly deferential." *Id.* We may presume a within-Guidelines sentence is substantively reasonable. *United States v. Libbey-Tipton*, 948 F.3d 694, 705 (6th Cir. 2020). Taylor "must surmount a high bar to succeed on [his] substantive-reasonableness challenge," and we "reverse only if we find that the [district] court abused its significant discretion." *United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019).

## A. Criminal History

Taylor asserts that his 119-month sentence is substantively unreasonable because it is at the upper end of the Guidelines range of 97 to 121 months. He argues that the district court arrived at 119 months by improperly considering his juvenile and unscored offenses, and by overweighing his criminal history. Those arguments do not persuade. A district court may "consider [a defendant's] prior criminal history when sentencing him . . . ." *United States v. Morris*, 71 F.4th 475, 482 (6th Cir. 2023). Indeed, we permit district courts to consider both juvenile and unscored offenses as part of a defendant's criminal history. *See United States v. Mitchell*, 107 F.4th 534, 544 (6th Cir. 2024) (juvenile offenses); *United States v. Cechini*, 834 F. App'x 201, 205–06 (6th Cir. 2020) (unscored offenses).

Assigning weight to the § 3553(a) factors is up to the district court's discretion, not ours. *United States v. Johnson*, 934 F.3d 498, 500 (6th Cir. 2019) ("A district court gets plenty of deference in this area in view of the many factors that go into this judgment-driven exercise." (citing *Gall*, 552 U.S. at 51–52)). A district court does not commit "reversible error" merely by "attaching . . . great weight" to some factors over others. *United States v. Dunnican*, 961 F.3d 859,

881 (6th Cir. 2020) (cleaned up). "Inevitably, not all § 3553(a) factors are important in every sentencing; often one or two prevail, while others pale." *Id.* (cleaned up). The district court need only "explain[] why the circumstance warrants additional weight with regard to that particular defendant's sentence." *United States v. Nixon*, 664 F.3d 624, 626 (6th Cir. 2011) (citation omitted). We have repeatedly deferred to a district court's weighing of criminal history under the § 3553(a) factors, even when supporting a significant upward variance.[4] That is all the more reason to defer here because Taylor's sentence is within the Guidelines range—and therefore presumptively reasonable.

Here, the district court adequately explained how the § 3553(a) factors supported its within-Guidelines sentence. The district court explained the nature and circumstances of the offense and addressed Taylor's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). Taylor's extensive criminal history, beginning in his youth, showed a disrespect for the law and a high likelihood of recidivism. That history included several felonies and a crime of violence. Although unemployed for about 10 years, Taylor lived an elevated lifestyle. He supported that lifestyle by dealing a dangerous drug and evading law enforcement for 10 years. The court noted the need to avoid sentencing disparities, *see id.* § 3553(a)(6), but stated it believed the sentence was necessary to deter Taylor and protect the public from further crime, *see id.* § 3553(a)(2). Given these facts and the district court's explanation, the district court did not clearly err in giving Taylor a within-Guidelines sentence of 119 months. *See United States v. Lanning*, 633 F.3d 469, 474 (6th Cir. 2011) (affirming the district court's sentence because it "consider[ed] [defendant's] prior offenses

---

[4] *See, e.g.*, *Dunnican*, 961 F.3d at 881 ("We have consistently rejected defendants' arguments that a district court cannot impose upward variances based on criminal history, simply because the Guidelines calculation already accounts for criminal history as a factor."); *Johnson*, 934 F.3d at 501 (affirming district court's upward variance because "the court gave several compelling reasons to justify the variance, including the reality that [defendant's] criminal history category didn't capture the seriousness of his record and the concern that he would continue to offend absent a stern sentence").

and his likelihood of reoffending" but also "carefully balanced the § 3553(a) factors" by considering "the need for deterrence and protection of the public, the seriousness of [defendant's] crime, the need to provide him with rehabilitative treatment, and [his] lack of respect for the law").

Taylor cites *United States v. Boucher*, 937 F.3d 702 (6th Cir. 2019), for the proposition that "a court may not rely disproportionately on prior convictions, especially when those convictions are not recent or scored." Appellant Br. at 17–18. To be clear, we do not believe the district court relied disproportionately on prior convictions; rather, the court appropriately weighed the § 3553(a) factors according to its discretion. But even if we disagreed with the district court's balancing, *Boucher* does not support Taylor's position. In *Boucher*, defendant Boucher attacked Senator Rand Paul and broke six of Paul's ribs. 937 F.3d at 704. The district court gave Boucher a significant downward variance—from a range of 21 to 27 months, down to 30 days—largely because of his "excellent background." *Id.* at 709–10. This court reversed for several reasons, two relevant here. First, the district court relied too heavily on Boucher's *non*existent criminal history to excuse the severity of his charged crime. *Id.* at 712. Second, this court noted that "a defendant's criminal record is relevant to determining the applicable criminal history category," but is "usually not a proper reason for a variance precisely because the Guidelines already take it into account." *Id.* at 711 (cleaned up). Unlike the defendant in *Boucher*, Taylor has an extensive criminal history. And the district court gave Taylor a within-Guidelines sentence, while *Boucher* speaks to sentence variances. In sum, Taylor's substantive unreasonableness challenge amounts to nothing more than a grievance that "the district court did not weigh the § 3553(a) factors as [he] hoped. But that reality alone doesn't create an abuse of discretion." *Gardner*, 32 F.4th at 531 (citation omitted).

### B. Sentence Higher than Average or Median

Next, Taylor asserts that his sentence was substantively unreasonable because the district court gave him a higher sentence than the national average and median for his offense level and criminal history. For Taylor's offense level of 29 and criminal history category II, the district duly noted that the average sentence is 97 months and the median sentence 107 months. Taylor argues that, by giving him 12 more months than the national median, the district court gave insufficient weight to 18 U.S.C. § 3553(a)(6). That provision requires the district court to consider, among other sentencing factors, "the need to avoid *unwarranted* sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6) (emphasis added). Because "the Guidelines address the statutory purpose of combatting disparity," "§ 3553(a)(6) ordinarily is an improper vehicle for challenging a within-Guidelines sentence." *United States v. Hymes*, 19 F.4th 928, 937 (6th Cir. 2021) (cleaned up). And, as discussed above, Taylor failed to show that the district court improperly calculated his drug quantity or inappropriately considered his criminal history. So he has not shown that his within-Guidelines sentence was unwarranted. *See United States v. Bradley*, 897 F.3d 779, 786 (6th Cir. 2018) ("There is nothing 'unwarranted' about correct sentencing calculations."). What is more, nothing in our caselaw suggests that the district court must apply a national average or median sentence. Rather, we "expressly reject[ed] imposing" the "requirement" to consult national data "on district courts." *Hymes*, 19 F.4th at 936. In fact, the district judge need not even "consult" national data at all "before issuing a sentence." *Id.* at 935. So the district court did not abuse its discretion by giving Taylor a higher sentence than the national average or median—especially because Taylor's sentence fell within the Guidelines range. *See Bradley*, 897 F.3d at 786

(defendant's claim that his sentence was too long was "a tall order, particularly" because his sentence "[did] not exceed the guidelines range").

## C. Fifth Amendment

Finally, Taylor asserts that the district court gave him a near-maximum sentence to punish him for pleading the Fifth Amendment during his first sentencing hearing. He contends that this renders his sentence substantively unreasonable. *But see Mitchell*, 107 F.4th at 541 (framing sentencing challenges based on "the court's alleged bias" as "procedural in nature"). A panel of this court previously considered and rejected that exact same argument. *See In re Taylor*, No. 23-3957, 2024 U.S. App. LEXIS 26422, at *1 (6th Cir. Oct. 18, 2024). "The law-of-the-case doctrine precludes reconsideration of issues decided at an earlier stage of the case." *Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017) (citation omitted). While the doctrine does not strictly bind this court, "we generally will not, for prudential reasons, consider issues addressed by a prior panel," except "in exceptional circumstances." *Id.* at 425–26 (citing *Musacchio v. United States*, 577 U.S. 237, 245 (2016)). Those exceptional circumstances are: "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Id.* at 426 (citation omitted).

None of those exceptional circumstances is present here. The evidence before us is not "materially different" from the evidence before the prior panel. *United States v. Rayborn*, 495 F.3d 328, 337 (6th Cir. 2007). The only different "evidence" Taylor presents here is the final 119-month sentence imposed during his second sentencing hearing. Taylor does not show that his 119-month sentence constitutes "substantially different evidence." *Id.* Rather, he challenges the sentence using the exact same Fifth Amendment argument the panel previously rejected, with no

explanation as to how the mere imposition of a final sentence further justifies his claim. *Compare In re Taylor*, 2024 U.S. App. LEXIS 26422, at \*3 (rejecting Taylor's Fifth Amendment arguments), *with* Appellant Br. at 21–22 (presenting the same arguments premised on the Fifth Amendment). Additionally, Taylor presents no intervening change in law that invalidates the prior panel's decision. Nor are we aware of any. Finally, the panel's prior decision is not clearly erroneous. The panel noted that Taylor "did not invoke" his Fifth Amendment right against self-incrimination "at any point during" the first sentencing hearing. *In re Taylor*, 2024 U.S. App. LEXIS 26422, at \*3. So the district judge could not have punished Taylor for invoking the right. *Id.* On appeal, Taylor fails to dispute—or even address—the panel's conclusion. We fail to see how the prior panel clearly erred; thus, the law-of-the-case doctrine bars us from reassessing Taylor's previously rejected Fifth Amendment argument. *See Rayborn*, 495 F.3d at 337.

When reviewing a district court's sentence for substantive reasonableness, we "look to whether the sentence is reasonable, not to whether we would have imposed the same sentence in the first instance." *Gardner*, 32 F.4th at 532 (cleaned up). The district court reasonably concluded that Taylor's drug quantity, criminal history, and recidivism rate warranted a sentence near the top of the Guidelines range. Thus, we defer to the district court's weighing of the § 3553(a) factors. *See id.*

## IV.

The district court did not procedurally err in calculating the converted drug weight attributable to Taylor. Neither did the district court substantively err in giving Taylor a within-Guidelines sentence. So, we reject Taylor's arguments and **AFFIRM**.